# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| FASTENAL COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:19CV1400 RLW |
| ) | |
| AMERICAN PIPING PRODUCTS, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant American Piping Products, Inc.'s Motion to Dismiss the Complaint. (ECF No. 11) After careful consideration, the Court denies the motion.

## BACKGROUND[1]

This case arises from alleged breach of contract and related warranties. Plaintiff Fastenal Company, a Minnesota corporation, provides fasteners, tools, and supplies to customers who manufacture products. Defendant American Piping Products, Inc., a Missouri corporation, supplies steel to customers like Plaintiff.

On May 4, 2016, Plaintiff transmitted a Purchase Order ("P.O.") to Defendant for a specified quantity and quality of pipe in exchange for payment in the amount of $57,306.79. (Ex. A, ECF No. 1-3 at 1) The P.O. provided:

> *By accepting this Purchase Order, the Vendor ('Supplier') agrees that this transaction is subject to Fastenal's Purchase Order Terms and Conditions and Code of Conduct.* Fastenal's Purchase Order Terms and Conditions, along with the Code of Conduct, are posted and accessible for Supplier to review at www.fastenal.com under the 'Legal Information' link on our landing page. . . .

---

[1] In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences most favorably to the complainant. *U.S. ex rel. Raynor v. Nat'l Rural Utilities Co-op. Fin., Corp.*, 690 F.3d 951, 955 (8th Cir. 2012); *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008).

> *All goods supplied to Fastenal pursuant to this Purchase Order will be subject to these Purchase Order Terms and Conditions, unless otherwise agreed to in writing by Fastenal.*

(ECF No. 1-3 at 1) (emphasis added) The terms and conditions of the P.O. further provided: "No terms or conditions in any acceptance, confirmation, acknowledgment or invoice from the Supplier . . . inconsistent with this Purchase Order ('P.O.') shall apply *unless approved in writing by Fastenal.*" (Ex. B, ECF No. 1-4 at 3) (emphasis added) The P.O.'s terms and conditions also provides the following, in relevant part, under a section titled "Warranties":

> Seller warrants that for a period of one (1) year after distribution by Fastenal: (i) all products covered by this P.O. will be of good quality workmanship, free from defects, and fit and sufficient for the intended purpose for which required; (ii) all materials supplied under this P.O. will conform to the description, quality and performance furnished or specified by Fastenal, or if not furnished or specified, to standard commercial specifications . . . . The warranties in this section shall survive delivery of the goods or completion of services and shall not be waived by acceptance of products or payment. Such warranties shall cover all losses, including costs and expenses (including reasonable attorney's fees) to which Fastenal will be exposed by any defects in Seller's material or performance. These warranties will extend and be passed through to Fastenal's customers and subsequent end users of such products.

(*Id.*)

On August 5, 2016, Defendant shipped the requested product to Plaintiff and transmitted a Sales Acknowledgement ("S.A.") (Ex. C, ECF No. 1-5) The S.A. included the following provisions:

> 6. **SOLE AND EXCLUSIVE WARRANTY.** Seller warrants to Buyer that the goods sold by Seller hereunder will be free from material defects in material and workmanship when used under proper and normal use for a period of thirty days from date of delivery. Should the goods not conform to such warranty, and upon confirmation by Seller of the facts giving rise to such nonconformance, Seller shall, upon prompt notice from Buyer, and at Seller's option, repair or replace nonconforming goods. THE FOREGOING WARRANTY SHALL NOT APPLY TO DAMAGE OR DEFECTS CAUSED BY DELIVERY, STORAGE, INSTALLATION, OPERATION OR MAINTENANCE BY ANY PERSON OTHER THAN SELLER, OR BY ORDINARY WEAR AND TEAR, AND IS THE SOLE AND EXCLUSIVE WARRANTY BY SELLER IN LIEU OF ALL

OTHER WARRANTIES WHETHER WRITTEN, ORAL OR IMPLIED. SELLER MAKES NO OTHER WARRANTY, EXPRESS OR IMPLIED, AND SPECIFICALLY DISCLAIMS AND EXCLUDES ANY WARRANTY OF MERCHANTABILITY AND/OR FITNESS FOR A PARTICULAR PURPOSE OR USE.

7. **LIMITATION OF LIABILITY; NO CONSEQUENTIAL OR EXEMPLARY DAMAGES.** IT IS UNDERSTOOD AND AGREED THAT SELLER'S LIABILITY, WHETHER IN CONTRACT, TORT, UNDER ANY WARRANTY, IN NEGLIGENCE OR OTHERWISE, SHALL NOT EXCEED THE RETURN OF THE AMOUNT OF THE PURCHASE PRICE PAID BY BUYER, AND UNDER NO CIRCUMSTANCES SHALL SELLER BE LIABLE FOR SPECIAL, EXEMPLARY, INDIRECT OR CONSEQUENTIAL DAMAGES. THE PRICE STATED IN THE AGREEMENT IS A CONSIDERATION IN LIMITING SELLER'S LIABILITY.

. . .

10. **ENTIRE AGREEMENT; BINDING EFFECT; NO ASSIGNMENT.** This Agreement contains and sets forth the entire agreement between Seller and Buyer with respect to the subject matter of this Agreement. *There are no promises, understandings, representations or warranties, express or implied, regarding that subject matter that are not set forth in this Agreement.* This Agreement shall be binding upon, and inure to the benefit of, each of the parties and their respective successors and permitted assigns. Buyer shall not assign this Agreement, in whole or in part, without the prior written consent of Seller.

(*Id.* at 2) (bold and all caps in original, italics added)

After the product was delivered, Plaintiff cut and sold the product to a third-party customer for use in its oil pipe operations. Once the product was installed, however, it was discovered that it did not meet the specifications for the specific grade of pipe purchased. Plaintiff and its customer ultimately negotiated Plaintiff's reimbursement for a recall of the product in the amount of $220,000, which Plaintiff paid and/or credited in full.

On March 19, 2019, Plaintiff provided a written demand for Defendant to reimburse all damages Plaintiff sustained as a result the nonconforming product. (Ex. D, ECF No. 1-6) In addition to requesting reimbursement of the negotiated recall price paid to its customer, Plaintiff demanded payment in the amount of $15,000 for additional internal expenses related to this

matter. (*Id.*) Plaintiff alleges Defendant has thus far refused to pay the requested reimbursement.

Plaintiff filed this action asserting the Court has diversity jurisdiction because complete diversity exists between the parties and the amount in controversy exceeds the jurisdictional threshold of $75,000. In the Complaint, Plaintiff brings the following three causes of action against Defendant: breach of contract (Count I); breach of express warranties (Count II); and breach of implied warranty of merchantability (Count III). Defendant has moved to dismiss Plaintiff's claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 11) The motion is fully briefed and ready for disposition.

## **LEGAL STANDARDS**

"Federal courts are courts of limited jurisdiction. The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." *Godfrey v. Pulitzer Pub. Co.*, 161 F.3d 1137, 1141 (8th Cir. 1998) (internal citations and quotation marks omitted). "The purpose of a Rule 12(b)(1) motion is to allow the court to address the threshold question of jurisdiction, as 'judicial economy demands that the issue be decided at the outset rather than deferring it until trial.'" *B.A. v. Missouri*, No. 2:16 CV 72 CDP, 2017 WL 106433, at *1 (E.D. Mo. Jan. 11, 2017) (quoting *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990)). To dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), "the complaint must be successfully challenged on its face or on the factual truthfulness of its averments." *Swiish v. Nixon*, No. 4:14-CV-2089 CAS, 2015 WL 867650, at *2 (E.D. Mo. Feb. 27, 2015) (quoting *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993)).

"A court deciding a motion under Rule 12(b)(1) must distinguish between a 'facial attack' and a 'factual attack' on jurisdiction." *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) (internal quotation marks and citation omitted). "In a facial attack, 'the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6).'" *Id.* (quoting *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (internal citations omitted)). Where a movant raises a factual attack, the court may consider matters outside the pleadings, and the non-movant does not have the benefit of the 12(b)(6) protections. *Id.* (citation omitted).

A complaint must be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted if the complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.* at 555. Courts must liberally construe the complaint in the light most favorable to the plaintiff and accept the factual allegations as true. *See Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008) (stating that in a motion to dismiss, courts accept as true all factual allegations in the complaint); *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008) (explaining that courts should liberally construe the complaint in the light most favorable to the plaintiff).

However, "[w]here the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Benton v. Merrill Lynch & Co.*, 524 F.3d 866, 870 (8th Cir. 2008) (citation omitted). Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). When considering a motion to dismiss, a court can

"begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Legal conclusions must be supported by factual allegations to survive a motion to dismiss. *Id.*

## DISCUSSION

Defendant argues the terms in its S.A. constituted a counteroffer to Plaintiff's P.O. and that Plaintiff accepted its terms by accepting delivery of the product. Accordingly, Defendant asserts a facial attack pursuant to Rule 12(b)(1) and argues the case should be dismissed because the Court lacks subject matter jurisdiction as the S.A. expressly limits Plaintiff's potential recovery to the purchase price ($57,306.79), which is below the jurisdictional threshold for diversity jurisdiction of $75,000. *See* 28 U.S.C. § 1332(a)(1). Additionally, Defendant contends that the S.A. disclaims the express and implied warranties upon which Plaintiff's bases its claims and that Plaintiff fails to allege it gave Defendant timely notice of the alleged defects.

Plaintiff responds by arguing the terms of the S.A. materially altered the terms of the P.O. despite Plaintiff's explicitly limiting acceptance of the contract between the parties to Defendant's acquiescence to the terms of the P.O. According to Plaintiff, this case presents a "battle of the forms" in which the gap filler provisions of the Uniform Commercial Code ("UCC") must resolve any discrepancy between conflicting contract terms between merchants. Consequently, Plaintiff argues Defendant's motion to dismiss should be denied.

Under Article 2 of the UCC as adopted by Missouri, additional terms in a written order confirmation between merchants will be considered part of the contract unless:

    (a) the offer expressly limits acceptance to the terms of the offer;
    (b) they materially alter it; or
    (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

Mo. Rev. Stat. § 400.2-207(2). Here, Plaintiff argues it expressly limited its acceptance to the agreement with Defendant to the terms contained in the P.O., which provided:

> By accepting this Purchase Order, the Vendor ('Supplier') agrees that this transaction is subject to Fastenal's Purchase Order Terms and Conditions and Code of Conduct. . . . All goods supplied to Fastenal pursuant to this Purchase Order will be subject to these Purchase Order Terms and Conditions, unless otherwise agreed to in writing by Fastenal.

(ECF No. 1-3 at 1) Additionally, Plaintiff argues the terms in the S.A. materially altered the agreement by, among other things, limiting its potential recovery to exclude consequential damages and disclaiming certain warranties. *See Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 401 F.3d 901, 912 (8th Cir. 2005) (holding that a damages limitation provision constituted a material alteration as it "would result in both hardship and surprise" to the plaintiff).

After careful consideration, the Court concludes that Defendant's motion to dismiss must be denied. The viability of Plaintiff's claims against Defendant ultimately hinges on what terms should apply to the agreement between the parties. Defendant's arguments seeking dismissal pursuant to Rule 12(b)(1) and (6) require a finding that the terms of the S.A. are binding on the parties' agreement. Whether the terms of the S.A., including the damages limitation and warranty disclaimer, acted as valid counteroffer under the UCC requires a determination not properly made in a motion to dismiss. For example, the Eighth Circuit has noted that "courts have consistently held it is a question of *fact* whether a remedies limitation constitutes a material alteration." *Shur-Value Stamps, Inc. v. Phillips Petroleum Co.*, 50 F.3d 592, 598 (8th Cir.1995). As adopted by Missouri, the UCC provides that agreements "may limit or alter the measure of damages recoverable under this article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts." Mo. Rev. Stat. § 400.2-719(1)(a). The UCC's comment further states that "*reasonable* agreements

limiting or modifying remedies are to be given effect." *Id.* cmt. 1 (emphasis added). The word "reasonable," however, is left open to interpretation because "[d]etermining the reasonableness of limitations on remedies requires a distinctly case and fact specific inquiry." *Shur-Value Stamps*, 50 F.3d at 599. Whether the terms in the S.A. were reasonable and whether it materially altered the parties' agreement is a question of fact not properly determined in a Rule 12(b)(6) motion. *See generally ASi Indus. GmbH v. MEMC Elec. Materials, Inc.*, No. 4:06CV951 CDP, 2008 WL 413819, at *5 (E.D. Mo. Feb. 13, 2008) (denying a motion for summary judgment). At this stage of the litigation, Plaintiff has sufficiently pleaded facts to survive a motion to dismiss.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant American Piping Products, Inc.'s Motion to Dismiss the Complaint (ECF No. 11) is **DENIED**.

Defendant is reminded of its obligation to answer or otherwise respond to the Complaint (ECF No. 1) within the time set by the rules.

Dated this 9th day of March, 2020.

_____
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**